James Knochel, pro se
P.O. Box 3499
Prescott, AZ 86302
(602) 842-2688
knochj@gmail.com
petitioner, in propria persona



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emily Noelle Mihaylo;<br>James Joseph Knochel,<br>　　　Plaintiffs,<br>vs.<br>Amy Fackrell;<br>John C. Morris;<br>Medical Director – West Yavapai Guidance Clinic,<br>　　　Respondents,<br>　　　and<br>The Attorney General Of The State Of Arizona,<br>　　　Additional Respondent. | Case No.: CV-19-8086-PCT-GMS (JZB)<br><br>**Declaration of Petitioner**<br>**James Knochel**<br><br>in support of<br>**Motion to Set Aside Order of Dismissal** |

I, petitioner James Joseph Knochel, hereby declare the following in support of the Motion to Set Aside Order of Dismissal and to Reinstate:

DECLARATION OF PETITIONER - 1

On March 25, 2019 I personally filed the present petition for writ of habeas corpus at the Clerk's office of the United States District Court for the District of Arizona. At the time I had not heard from the Party to the Petition, Emily Mihaylo ("Mihaylo"), since about December 13, 2018, when I dropped Mihaylo off in the vicinity of the house where she had been living. At that time Mihaylo warned me that I would likely not hear from her any time soon, but that she was "dedicated" to me. Also at that time Mihaylo requested I not contact anyone she has to deal with on a day to day basis (which I understood as being Viewpoint Dual Recovery, Yavapai County Probation, the Yavapai Superior Court, West Yavapai Guidance Clinic, etc), but gave her explicit permission for me to continue to work on her behalf in the federal courts. Thereafter, checking the Yavapai Superior Court's record I learned Mihaylo was formally ordered to have no contact with myself.

On about December 11 2018 Mihaylo warned me that her captors had attempted to coerce her into filing for an order of protection against me, but that she had refused this coercion.

After consulting with the District Court's free attorney program, I decided to re-file for habeas corpus on Mihaylo's behalf in March 2019, with the belief that Mihaylo's notarized notice of the coercive nature of the "motion to dismiss" was sufficient evidence of fraud on the court. The attorney used that term specifically, but at the time I didn't realize the difference between 'fraud' and 'fraud on the court'.

At 9:25pm on July 22 2019 Emily Mihaylo called me for the first time since December 13 2018. On that call Mihaylo informed me that she had run away from Viewpoint Dual Recovery a few days before by taking a rideshare

DECLARATION OF PETITIONER - 2

to Phoenix. Mihaylo informed that she could not get into her then-deceased mother's house, and that she had run out of places to stay. As I was tired already, I promised to drive to Phoenix on July 23rd.

On the morning of July 23 2019 Mihaylo called to inform that she was outside the apartments on the southeast corner of 27th St and Campbell Ave. When I arrived I noted Mihaylo was chattering semi-psychotically. I decided she needed food, so we went to Costco for hotdogs and soda. Mihaylo started to calm down after eating. We then went to Goodwill, where I bought Mihaylo fresh clothes, then we returned to Prescott.

Mihaylo subsequently confirmed to me all the allegations contained in my various filings in this District Court, which were made while Mihaylo and I were denied freedom of association on account of my efforts to help Mihaylo assert her fundamental rights.

Mihaylo was very apprehensive about going out in public and being seen violating her probation court's no-contact order, and mostly sheltered at my house. By July 31, 2019, Mihaylo thought it worth the risk to attend my weekly Toastmasters meeting, where I introduced Mihaylo as my girlfriend to the other members of the club. Mihaylo interacted with various other members of the club, who did not realize the Mihaylo had quit all her psychiatric medications cold-turkey two weeks before.

Mihaylo had been working on signing a lease for apartment 17 at 180 S. Bradshaw Drive, Prescott AZ. Matt and his wife (whose name I've forgotten) were the managers of these apartments. Matt's wife showed Mihaylo and myself the apartment. The apartment was still being refurbished, and was

DECLARATION OF PETITIONER - 3

not yet ready for move-in. I personally witnessed Party sign the lease for the apartment and pay the deposit a few days before the apartment was available. My first picture inside Mihaylo's apartment is dated August 3, 2019. This was probably the day she took possession of the unit.

Mihaylo arranged for her biological brother, Dylan Gilman ("Gilman"), to fly to Arizona the day after she took possession of the apartment. Mihaylo bought Dylan's ticket via a phone app, which paid for the ticket and allowed Mihaylo to make payments to the company (This step was necessary because Mihaylo did not have any of her payment cards, on account of her unplanned departure from Viewpoint Dual Recovery). I provided cots, sleeping bags and a coffee pot for them to move into the apartment.

Having violated her probation by absconding from her involuntary treatment center, Mihaylo was aware that she had legal problems. Mihaylo asked around, and interviewed with attorney Cliff Hill to see if he'd represent her. I waited in Mr. Hill's waiting area while Mihaylo had her initial meeting with Mr. Hill. Mihaylo told me that Mr. Hill offered to represent her for a flat fee.

Soon after moving into her apartment, I witnessed Mihaylo purchase a dark blue 2015 Buick Verano, VIN 1G4PP5SK7F4197123, from Street Dreams, a used car dealer located at 1120 E. Gurley St, Prescott AZ (The VIN # is from Mihaylo's registration renewal, which was sent to my house in May 2020).

I was not able to attend Mihaylo's August 8, 2019 court hearing, on account of Mihaylo not wanting to antagonize the judge who'd ordered her to have no contact with myself. I learned from Gilman that Mihaylo was taken into

custody at this hearing because the probation officer had filed to revoke Mihaylo's probation the day before.

After her hearing on August 12 2019, Mihaylo called me to inform that her bond was set to $5000, and asked me to work with her brother to get her out. While Dylan did have Mihaylo's debit card, he did not have full access to her funds. I had $5000 available to me. Dylan and I drove to the county jail in Camp Verde, Arizona. Because of the no contact order, I gave $5000 cash to Dylan, who successfully paid the bail. Mihaylo was released. I have a picture of the bail receipt on my phone.

Over the days that followed, I noted Mihaylo seemed to be gradually deteriorating from how she'd been before Dylan arrived, and before she was incarcerated. Mihaylo had previously told me that she did not find her biological family until she was about 19 years old (she did not have shared experience of growing up with her biological brother). Having Dylan around seemed to be stressful, and Mihaylo soon kicked him out, in a less-than-hospitable manner.

At her September 2019 probation revocation hearing, Mihaylo plead guilty to a felony for the charges challenged by this Petition, and was sentenced to time served. This was instead of the misdemeanor which she originally plea-bargained for. Mihaylo later told me that she only plead guilty to the felony because the State of Arizona wanted to send her to jail for an additional 4 months, and Mihaylo did not think she would benefit from being caged.

## Mihaylo's September/October 2019 Deterioration

I personally witnessed Mihaylo's deterioration accelerate when she resumed the consumption of alcohol following her release from probation (September 3 2019). On my complaints, Mihaylo said it was okay for her to drink alcohol because it's legal, and because she was no longer on probation. I note the September 2019 anniversary of the death of Mihaylo's mother seems to have triggered the drinking binge that directly preceded Mihaylo's October 2019 psychotic break that resulted in her November 2019 order for involuntary mental health treatment. (Mihaylo informed me her previous order for involuntary treatment was allowed to expire in November 2018).

While watching Mihaylo deteriorate, I made efforts to intervene, and made several videos to objectively document the actual happenings. Matt, the manager of Mihaylo's apartment complex, is also a witness to Mihaylo's intoxication, the evidence of her drinking binges, and my interactions with Mihaylo while she was intoxicated.

On October 16 2019 Emily Mihaylo's father, Steve Mihaylo, called me to inquire as to the location of his daughter. I informed that Emily Mihaylo was at that time in a mental hospital in Phoenix. I subsequently gave Emily Mihaylo Susie Mihaylo's phone number. When I stopped receiving calls from Emily via the mental hospital phone, I learned from Steve Mihaylo that Emily Mihaylo had been released, presumably in accordance with the statutory limit of 48 hours for an involuntary hold.

Steve Mihaylo and I tried to file a missing person report together with the Phoenix Police on October 22 2019. Initially the police officer at the desk

was skeptical. Steve Mihaylo revealed that he had hired an attorney to file for Emily Mihaylo's guardianship and needed to file a missing person report in lieu of service of his guardianship petition. The police officer checked and informed that Emily Mihaylo was not missing because the Phoenix Police had taken her back to the mental hospital the day before. Steve Mihaylo and I proceeded to the mental hospital and spoke to Emily Mihaylo's case manager, Stuart, who enabled service of Steve Mihaylo's guardianship petition, and who used the information provided by myself to make sure Emily Mihaylo's prosecution for involuntary mental health treatment would not be dropped at 48 hours. The case manager informed that dozens/hundreds of mental health cases are dropped every month, as Arizona's mental health system has vastly more potential patients than capacity to prosecute.

I received calls from Emily Mihaylo following her transfer to Valleywise Health's behavioral health facility in Maryvale. Mihaylo did not allow my visitation until November 7, 2019. I also visited on November 9 and November 11, 2020. At the visit on November 11, Mihaylo informed me that she was to be injected with Abilify on November 12, as her psychiatrists had just received the state court's order for involuntary treatment.

On November 12, 2020 I received a call from Mihaylo via the Valleywise Health phone number. Mihaylo was incoherent, made hostile accusations of me, then hung up.

On November 25, 2019 I filed for habeas corpus on Mihaylo's behalf. The judge at the probate court denied my filing without prejudice, on account of Mihaylo's active mental health case. At my second trip that day to the filing

DECLARATION OF PETITIONER - 7

counter, the clerk mistakenly gave me Mihaylo's mental health court case number, realized she'd made a mistake, crossed out and applied whiteout to the case number she'd written, and referred me to the public computers to find the case # (presumably knowing it would not be found there). Mihaylo's mental health case number had leaked into the public record via her guardianship proceedings, and I was able to successfully file into Mihaylo's active mental health court case. This petition was denied by refusing to grant me standing, even though the cited case law requires mental competency hearings, and Mihaylo had already been found mentally incompetent.

On November 28 2019 I called the Valleywise Health ward where Mihaylo was housed. When Emily Mihaylo came on the phone she said, "Oh, it's Thanksgiving. We broke up. I'm going to hang up now."

**Mihaylo's housing at a care home for disabled adults**

I consulted with the state probate court's public record to check on my friend. The filings showed that a temporary guardian was assigned to Emily Mihaylo in November 2019. The guardian moved Mihaylo to a care home for disabled individuals in December 2019. Mihaylo's permanent guardianship and conservatorship was assigned to the same company in February 18 2020. Mihaylo's guardian has kept Mihaylo housed at the same lockdown facility since December 2019.

Mihaylo called me from the care home's landline phone on February 13, 2020. There was no number listed on that call, but I believe the phone company's records will show the actual origin of this call. Mihaylo

DECLARATION OF PETITIONER - 8

subsequently called me from her Apple iPod's Facetime calling feature. Mihaylo eventually got a new Apple iPhone, and told me how her guardian coerced her into getting a new phone number. Mihaylo later told me that she called T-Mobile herself to change her phone number back to her old number. My phone records clearly show that I have received calls from Mihaylo's phone number on most days since February 24, 2020.

Since March 2020 Mihaylo has told me of her efforts to challenge her guardianship, primarily by seeking a new psychiatric evaluation. Mihaylo told me the staff at her care home recognize that Party no longer needs to be housed there, and are encouraging in Party's efforts. In June 2020 Mihaylo told me that her guardian said she is not eligible for a new psychiatric evaluation before October 2020. On July 5 2020, I learned that Mihaylo never actually sent the letter to the state probate court that she had written.

On July 6, 2020, I assisted Mihaylo with the finalization of her letter to the state probate court, by which Mihaylo herself requests a status hearing (Motion to Reinstate, Attachment D). My assistance consisted of determining the specific mailing address for the Maricopa Superior Court's probate court division, and by sending a photograph of the heading for her probate case so she could properly emulate this on her hand-written coversheet. Mihaylo sent me pictures of her envelope, coversheet, and grievance letter. I told her that these would be fine for getting her complaint to a judge for consideration.

I myself had nothing to do with the preparation nor the typing of Mihaylo's letter to the Superior Court of the State of Arizona. Emily Mihaylo did not

DECLARATION OF PETITIONER - 9

send me the full view of all the pages of her grievance letter. After sending the document on July 7, 2020, Mihaylo called me concerned that she had not included her phone number or email address. I said this was not a concern, as they knew where to find her, and would not conduct a hearing without her attorney's presence.

I observe that Mihaylo seems to have mostly recovered from her acute psychotic break of October 2020. This recovery is in spite of the resumption of medications which I believe and understand are contraindicated to treat substance-induced psychosis, and also not indicated to address Mihaylo's genetic condition underlying her tendency to self-medicate her depression.

Dated this ___4___ day of August, 2020

_____
James J. Knochel, Pro Se
P.O. Box 3499
Prescott, AZ 86303
knochj@gmail.com
(602) 842-2688

DECLARATION OF PETITIONER - 10