

1  James Knochel, pro se
2  P.O. Box 3499
   Prescott, AZ 86302
3  (602) 842-2688
   knochj@gmail.com
4  petitioner, in propria persona

5

6          IN THE UNITED STATES DISTRICT COURT

7           FOR THE DISTRICT OF ARIZONA

8

9  Emily Noelle Mihaylo;                    Case No.: CV-19-8086-PCT-GMS
10                                           (JZB)
   James Joseph Knochel,
11
             Plaintiffs,
12                                           **Motion to Set Aside Order of
13 vs.                                       Dismissal and to Reinstate**

14 Amy Fackrell;                             **on Petition for Writ of Habeas
15                                           Corpus**
   John C. Morris;
16                                           **with declaration in support**
   Medical Director – West Yavapai
17 Guidance Clinic,

18      Respondents,

19      and

20 The Attorney General Of The
21 State Of Arizona,

22      •  Additional
23         Respondent.

24

25

26

27

Petitioner Emily Noelle Mihaylo (Party or "Mihaylo"), through her next friend James Joseph Knochel ("Knochel"), hereby moves this Honorable court to set aside its order of dismissal, dated MAY 7 2019, on account of fraud on the court. For this motion Knochel cites the Court's inherent power to investigate fraud on the court to correct miscarriages of justice, as well as Fed R Civ P 60(a), 60(b)(2), 60(b)(3), 60(b)(6), and 60(d)(3), as discussed in the memorandum of law below.

The fraud on the court was perpetrated in a typed letter, on Respondent Fackrell's business stationary, docketed as a motion to dismiss CV-18-8004-PCT-GMS (JZB) (doc8). This letter was subsequently evidenced to have been written by Respondent and/or staff at the Party's former involuntary treatment center (CV 18-8004 doc14; also included in this petition's appendix, doc 5.1, pg 1). In dismissing the present petition without prejudice, the court did not investigate the circumstances of the typed Motion to Dismiss, as required by the case law cited, nor consider Party Mihaylo's hand-written and notarized letter (cv18-8004 doc14) asserting the coerced and fraudulent nature of the supposed Motion to Dismiss.

Developments sustaining Petitioners' claims of fraud on the court, subsequent to the court's dismissal, are presented below.

In July 2019 Party Mihaylo again absconded from her involuntary mental health treatment facility. On July 22, 2019 Mihaylo called Knochel because she'd run out of places to stay. Knochel retrieved Mihaylo from Phoenix on July 23 2019. Party Mihaylo did well for a while, was destabilized by her interactions with the state court in August and September 2019, then drank

herself back into the mental hospitals in September and October 2019.

Knochel's Declaration, attached to this Motion, tells of his experiences from the filing of this petition in March 2019 to the present, including how Knochel worked with Steve Mihaylo (father of Party Emily Mihaylo) to get Party Mihaylo re-captured by the mental health industry in October 2019.

During a visit at the mental hospital, on November 7, 9 or 11 2019, Party Mihaylo informed Knochel she was ordered to submit to involuntary mental health treatment the previous day. The state court's public record says Mihaylo was assigned a temporary guardian/conservator in November 2019 [Attachment A], and a permanent guardian/conservator in February 2020 [Attachment B].

## Witnesses to and Evidence of Fraud on the Court

From July 23 to November 11 2019 many witnesses and evidence of Knochel and Mihaylo's ongoing significant relationship accumulated. The following witnesses can testify to the fraud perpetrated on the District Court:

1. Scott Kwiatowski, High Noon Toastmasters, meeting on July 31 2019
2. Patricia Noel, High Noon Toastmasters, meeting on July 31 2019
3. Walt Smith, High Noon Toastmasters, meeting on July 31 2019
4. Lisa, owner of Lek's Asian Market, July/August 2019 - Mihaylo visited the establishment with Knochel and placed a special order.
5. Matt & his wife, property managers of Bradshaw Apartments, Prescott Arizona (August to October, 2019).

6. Shawn Haseltine -- mutual friend (2015 to present) - exchanged various phone calls with Mihaylo from November 2019 to the present.

Evidence supporting Petitioners' claims of fraud:

1. Knochel's request for a police welfare check, September 23 2019
2. Prescott Police report #19-9227, October 11 2019. The same officer had previously cited Party Mihaylo for disorderly conduct, and was thus familiar with Party's drinking problem.
3. Phone Records:
   - From Party Mihaylo's own phone to Knochel: March to December, 2018; July to October 2019; February 2020 to Present.
   - Calls from Knochel to Mihaylo, July 2019 to present.
   - Calls from various mental hospital phones to Knochel, October/November 2019
   - From Orion Home's phone to Knochel (February 13, 2020)
4. Visitation logs: Valleywise Health's Maryvale Behavior Health Annex, November 7, 9 and 11, 2019
5. Photos and Videos of Mihaylo and Knochel interacting in July/August/September/October 2019.
6. Mihaylo's driver license and State of Arizona vehicle registration documents, with Knochel's home address as Mihaylo's mailing address.

**Knochel's Claim as Party's Next-friend**

Party Mihaylo has not signed the present motion to reinstate. Knochel offers the following reasons why the Court should consider this next-friend filing, as permitted by 28 U.S. Code § 2242.

1. Knochel has been working on this Motion since April 2020 and has repeatedly encouraged Party Mihaylo to sign it. Until July 5 2020, Mihaylo believed her efforts on her own behalf were adequate, and that to participate in Knochel's filing in this court would jeopardize the expiration of her latest order for involuntary treatment.

2. On a phone call at 10:24pm on July 5 2020, Party Mihaylo shared how she suddenly realized her lackadaisical approach to her predicament would certainly lead to her death. At that time Party Mihaylo inquired as to the specific contents of this Motion. Knochel said she probably wouldn't like it. Mihaylo said it'd be better for her to not know the specifics, because extensive revisions would be time consuming.

   Explicit permission to file this motion on Mihaylo's behalf was obtained by Knochel at this call on July 5 2020.

3. Knochel is working for Party Mihaylo's best interests. For example, in October 2019 Knochel worked with Party Mihaylo's father to get Party re-captured by the mental health industry, even though Knochel believes the industry's standard practices destructively incompetent, because it was the only way to get Mihaylo off the streets.

4. Party Mihaylo has a tendency to delusional beliefs, as certified by the state court. For example, on November 12 2019, Party Mihaylo was reinjected with Abilify, rapidly deteriorated, and called Knochel to accuse him of improprieties. On November 28, 2020 Knochel called Mihaylo at the mental hospital. Mihaylo said, "Oh, it's Thanksgiving. We broke up. I'm going to hang up now." On November 29 2020, Mihaylo called Shawn

Haseltine, who reported to Knochel that Mihaylo then thought Knochel, her sister and her father were only after her money.

Party Mihaylo began to recover from her medication- and situation-induced delusions after being transferred to an adult care home in December 2020. Knochel attributes this recovery to Mihaylo's being kept sober, consistently fed, and allowed access to sunlight. Knochel believes Mihaylo's recovery is incomplete. For example, Mihaylo still believes there was a gas leak at her apartment in September/October 2019, and that this supposed gas leak resulted in her deterioration. Knochel does not believe there was a gas leak: Knochel's videos of Mihaylo's abandoned apartment, evidencing Mihaylo's alcohol problem, do not have any comments about the smell of natural gas. Mihaylo doesn't appreciate that her alcohol consumption put her in her present predicament.

5. Party Mihaylo's guardian formally prohibits Mihaylo and Knochel's contact. Mihaylo reported to Knochel that in December of 2020 she was asked about Knochel by her temporary guardian. The court-appointed guardian knew Knochel's name on account of the state's mental health court distributing its denial of standing to Knochel for his next-friend petition for writ of habeas corpus, to the parties to Mihaylo's guardianship proceedings (filed November 25 2019, denied November 27 2019). At that time Mihaylo told her guardian that she was "never going to talk to [Knochel] again", and was subsequently informed that in any case she is not allowed to speak to Knochel. (Mihaylo here specifically notes this was when she still not lucid due to her ordeal.) Mihaylo's care home allegedly has instructions to disallow Knochel's visitation.

6. Party Mihaylo resumed contact by calling Knochel from her current adult care home's phone on February 13, 2020. Mihaylo subsequently called Knochel daily from her iPod via the Facetime Audio/Video calling feature (there are no independent records of these calls). Mihaylo received a new phone in February or March 2020, and has called Knochel from her own phone number almost every day since (as recorded in Verizon and T-Mobile's call records). She also answers Knochel's calls. Knochel specifically uses the public phone network for most communications with Mihaylo so the phone companies have independent records of the calls.

7. Party Mihaylo told Knochel, in June 2020, that her psychiatric evaluation in December 2019 reported to the state's court that she is incapable of understanding court proceedings. Mihaylo told Knochel of her efforts to get a new psychiatric evaluation, as the previous evaluation was the day she'd been released from two months of confinement in one of Maricopa County's psychiatric wards. Mihaylo now recognizes she was not well from October to December 2019.

8. Party Mihaylo does not appreciate the significance of the crimes perpetrated against her, and the rule of law itself, by Respondents and the staff of Viewpoint Dual Recovery.

9. Party Mihaylo explained to their mutual friend, Shawn Haseltine, in April or May 2020, that Knochel's efforts on Mihaylo's behalf never go anywhere, and she finds it stressful to have to explain why Knochel is telling the various courts that she's been misdiagnosed and is actually harmed by the treatments which are supposed to help her. (Knochel read this paragraph to Mihaylo: "how does that sound?" Mihaylo responded,

"It's not so degrading, sounds okay. You do write well." Facetime Video call, 10:36 am July 2, 2020)

10.    In May 2020, Party Mihaylo told Knochel specific negative potential outcomes of signing this motion to the District Court:

- Party could lose contact with Knochel, per her guardian's previous prohibition of their contact.
- Party could lose access to her phone and her connection with outside world
- Party could lose her allowance and the ability to buy things for herself.
- Party expects her state court order for court-ordered mental health treatment will be allowed to expire in October 2020 on account of her medication compliance. Party believes signing anything to the courts which challenges her treatment program, even if written by someone else, would be interpreted as her indicating that she is trying to discontinue her involuntary psychiatric medications. This would likely result in the continuation of her order for involuntary treatment for an additional year.

11.    Mihaylo made the following statements to Knochel in June 2020 regarding an earlier emailed draft of this motion:

- "I don't like to be talked about, don't like limelight, don't like how this makes me sound as a person"
- "I need a sense of normalcy."
- "I've realized there's a lot I can be doing at this house."

Knochel notes that Mihaylo wants to be independent, and to take care of her own business. But Mihaylo has also expressed to Knochel that she's an adult who can drink alcohol if she wants to. Knochel believes Mihaylo does not appreciate the actual cause of her condition is substance abuse, and that she is greatly harmed by her current treatment program but would greatly benefit from appropriate medical interventions.

12.     When Party Mihaylo complains to Knochel about her circumstances of having a guardian and being housed in a care home for disabled adults, Knochel suggests that "Federal Court" is her best chance at having rights again (May 2020 to present). On 6-28-2020, Mihaylo 'wanted to understand what federal court would do'. Knochel commented that he hoped the District Court would consider whether the State can force citizens with rights to take Haldol, a medication also used by the Soviets to torture political dissidents.  Mihaylo instantly responded that she's not on Haldol anymore, and "I get off court ordered treatment in October, which is right around the corner. Then I can go to a psychiatrist and talk about Depakote[1] ", and "do not mess with my medication, hun." Mihaylo further noted, "I don't want to go crazy again", indicating that she appreciates how bad she got in October 2019, and doesn't want to risk taking herself off the drugs the professionals tell her she requires. Mihaylo believes she is functional on Abilify. Knochel believes Mihaylo exhibits compulsive behavior, a listed side effect of Abilify, and will rapidly deteriorate due to her prescription-induced compulsive behavior if she is

_____

[1] Depakote is marketed as a "mood stabilizer", which Mihaylo does not believe she needs. Mihaylo says she is on a non-therapeutic dose. Mihaylo would remove this from her treatment program if it were up to her. Mihaylo attributes her weight gain to this drug. Mihaylo has found this drug is also known to cause kidney problems and significantly lowers lifespan.

suddenly allowed to take care of herself.

13.    As of July 6 2020, Mihaylo considers her situation with her guardian forcing her to live in the care home intolerable, and has sent her own request for a hearing to the state probate court [Attachment D]. Knochel's sole involvement with this letter was finding the specific mailing address to use, giving the format for the caption, and telling Mihaylo to address it to "the judge of the Superior Court of the State of Arizona". Someone at the care home allegedly assisted Mihaylo with typing Mihaylo's Motion; Mihaylo declined to name her accomplice as she said this person would get in trouble.  On July 23 2020 Mihaylo received the budget, prepared by her guardian for the probate court's approval on July 22 2020 (supposedly sent to Mihaylo on July 1 2020). Mihaylo noticed improprieties, and believes her guardian is stealing her inheritance.

## Addressing the Oversights/Omissions in the Court's Order

The Court's MAY 7 2019 order (Doc4) dismissed without prejudice by finding Knochel still lacked standing to bring a habeas petition on behalf of Party Mihaylo. The order acknowledged Knochel's allegations of fraud upon the court, but did not share how the court decided the alleged-fraudulent document was genuine:

> Therein, Mr. Knochel again alleges that the January 24, 2018 letter in case no. 18-08006-PCT-GMS (JZB) was not sent by Petitioner, but was rather a fraudulent document sent by the administrators of Petitioner's mental healthcare facility. Mr. Knochel also provides a letter, which he purports to have been handwritten by Petitioner, stating that "the letter that I signed was not written by me. I was

pressured into signing it by ViewPoint staff." (Doc. 2-1 at 1).

-Doc 4, pg 2, ln 14-19

The provided letter was notarized, and was docketed by this court on December 17 2018. The copy provided in this case, (Doc 2-1 at 1 [sealed] / Doc 5-1 at 1 [unsealed]) was a true printout of cv-18-8004 Doc 14.

The court assumed Knochel's Notice of Removal, 19-cv-8137 (filed subsequent to the order of dismissal), confirmed its *assumptions* that Knochel's filings were not truthful. Knochel here points out the substantial sample of Mihaylo's lefty-handwriting in the removed state court case, 19-8137, doc 1, pg 14-15 [Attachment C] is exactly the same style as Mihaylo's Notice of coercion and fraud (doc 5-1 at 1 and cv18-8004 doc 14), and her own motion to reconsider her guardianship in the state court [Attachment D]. If read with the understanding that Mihaylo was then being held hostage by do-gooders, none of Mihaylo's statements in [Attachment C] actually constitute harassment but rather fully substantiate the narratives provided to this court by Knochel. If anyone cared to ask Mihaylo herself, she would confirm her petition for injunction against harassment in the state court was indeed coerced, and that she herself re-established contact with Knochel after escaping from her captors. Knochel's removal and appeal of remand of the state court's defective order of protection successfully allowed him to provide assistance to Mihaylo when requested.

**Memorandum of Law**

Fed R Civ P Rule 60 controls "Relief from a Judgment or Order".

Fed R Civ P Rule 60(a) allows the court to correct "Oversights and Omissions". In this order, the oversight/omission is the controlling case law's requirements for evidentiary and mental competency hearings.

Fed R Civ P Rule 60(b)(2) allows for newly discovered evidence. Mihaylo escaped from her captors in July 2019. The newly accumulated witnesses and evidence of Mihaylo and Knochel's ongoing relationship is subsequent to this court's MAY 7 2019 order of dismissal.

Fed R Civ P Rule 60(b)(3) addresses simple frauds.

Fed R Civ P Rule 60(b)(6) allows for "any other reason that justifies relief."

Fed R Civ P Rule 60 (c)(1) states:

> A motion under Rule 60(b) must be made within a reasonable time— and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

With regard to the time limitations, Knochel believes Rule 60(b)2 and 60(b)(3) were tolled while the appeal was pending, or that the rule tolls from July 22 2019, the date which Mihaylo contacted Knochel following her escape from her captors.

Fed R Civ P Rule 60 (d)(3) provides that Rule 60 does not limit the court's inherent power to investigate fraud on the court.

*US v. Sierra Pacific Industries, Inc* is a recent case from the 9th Circuit discussing simple fraud vs. fraud on the court:

[...] Thus, relief from judgment for fraud on the court is "available only to prevent a grave miscarriage of justice."

Our own cases, similarly, have emphasized that "not all fraud is fraud on the court." "In determining whether fraud constitutes fraud on the court, the relevant inquiry is not whether fraudulent conduct `prejudiced the opposing party,' but whether it `harmed the integrity of the judicial process.'"

Fraud on the court must be an "intentional, material misrepresentation."

Thus, fraud on the court "must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision."

In addition, the relevant misrepresentations must go "to the central issue in the case," and must "affect the outcome of the case,". In other words, the newly discovered misrepresentations must "significantly change the picture already drawn by previously available evidence." - *US v. Sierra Pacific Industries, Inc.*, 862 F. 3d 1157 at 1167-1168 - Court of Appeals, 9th Circuit 2017 (citations omitted)

There is no worse "unconscionable plan or scheme" than for a respondent to a petition for writ of habeas corpus to impersonate the Party to the petition for the express purpose of denying Party the fundamental privilege.

Finally, relief for fraud on the court is available only where the fraud was not known at the time of settlement or entry of judgment.

(allowing relief for "after-discovered fraud"); [...]

(explaining that there is no fraud on the court where "the plaintiff had the opportunity to challenge the alleged perjured testimony or non-disclosure because the issue was already before the court"). -i.d. at 1168 (citations omitted)

1    In the present petition, Party Mihaylo and Knochel had no opportunity to

2    challenge the fraudulent Motion to Dismiss, even though Knochel tried to

3    point out the Motion was obviously suspicious (January 2018) and had been

4    confirmed fraudulent to him (March 2019). Knochel did not have solid

5    evidence of and witnesses to the fraud until July 2019.

6

7    The following quotations from the case law discuss a federal court's inherent

8    power to address fraud perpetrated upon it:

9        The inherent power of a federal court to investigate whether a

10       judgment was obtained by fraud, is beyond question.

11       The power to unearth such a fraud is the power to unearth it

12       effectively. Accordingly, a federal court may bring before it by

13       appropriate means all those who may be affected by the outcome of its

14       investigation. But if the rights of parties are to be adjudicated in such

15       an investigation, the usual safeguards of adversary proceedings must

16       be observed. No doubt, if the court finds after a proper hearing that

17       fraud has been practiced upon it, *or that the very temple of justice has

18       been defiled*, the entire cost of the proceedings could justly be assessed

19       against the guilty parties.

20       - *Universal Oil Co. v. Root Rfg. Co.*, 328 US 575 (1946) at 580 (italics

21       added, citations omitted)

22   Mihaylo reminded Knochel that [Respondent], the person at her former

23   treatment center she believes wrote the letter she was forced to sign, is an

24   attorney. Knochel responded, "[Respondent] should have known better than

25   to do what she did." To use one's legal training and experiences to write a

26   cunningly-fraudulent letter is a case study in 'defiling the very temple of

27   justice'.

28       Of particular relevance here, the inherent power also allows a federal

         court to vacate its own judgment upon proof that a fraud has been

         perpetrated upon the court.

This "historic power of equity to set aside fraudulently begotten judgments," is necessary to the integrity of the courts, for *"tampering with the administration of justice in [this] manner . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public."* Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud.

- *Chambers v. Nasco, Inc.*, 501 US 32 (1991) at 44 (italics added, citations omitted)

When read these quotes from Supreme Court opinions on July 4 2020, Mihaylo again inquired what the point of going to federal court is. Knochel told her that what her former treatment center did to her -- making her sign a fake letter to the district court -- was not fair. Mihaylo responded, "it's in the past, something that happened a long time ago." Mihaylo is (was) confident that her predicament will resolve itself on her own efforts to get rid of her guardian, and that her order for involuntary treatment will expire. She is living in the moment, without the perspective to appreciate her current predicament is caused by the chain of rights violations she has experienced since September 2015.

Knochel prosecutes this case not just for himself and Party Mihaylo, but for the public itself: all of humanity is gravely harmed by the arrogance and incompetence of the medical guild. While doctors mean well, the courts should not participate in the Guild's arrogance.

**Additional Reasons for Granting the Motion to Reinstate**

Party is no longer in custody for the charges challenged in this petition, and she is time barred from herself refiling for habeas corpus to challenge the

violations of rights she experienced through that period of custody.

If the court declines this motion to reinstate, Knochel has adequate stimulus funds to file a paid petition for writ of mandamus to the court of appeals. The court of appeals previously did not grant a certificate of appealability, nor allow Knochel's motion to amend caption to be filed under seal. The motion to amend asked to change the appeal into a Mandamus proceeding. The reason for asking to file the appeal under seal was to respect Mihaylo's wishes to avoid the limelight, as there is an attorney on Twitter that claims to read all of the 9th Circuit's published opinions. Filing a petition for mandamus publicly will sidestep both the Court of Appeals' objections.

Knochel can also file another habeas petition in this court to challenge Mihaylo's current order for treatment and guardianship proceedings, under 28 USC 2254 (b)(1)(B), or file suits under other applicable federal statutes. The courts previously suggested it might label Knochel a "vexatious litigant", but that label actually has a test which requires the litigant to have had an opportunity to have their complaint considered by a court.

Knochel has various other strategies to present his grievances regarding his and Party's mistreatment by the State of Arizona.

## CONCLUSION

Wherefore, Party Emily Noelle Mihaylo, through her next friend James Joseph Knochel, pray this honorable court grant relief, and consider the Petition and the associated motions on their merits.

Attachment A: Notice of Change of Address for Ward and Update to Probate Information Sheet, Maricopa Superior Court #PB2019-002031, dated December 12 2019

Attachment B: Letters of Appointment As Guardian For An Adult, Maricopa Superior Court #PB2019-002031, dated February 18 2020

Attachment C: Mihaylo's handwriting sample from 19-cv-08137, for comparison to Mihaylo's Notice (copied at doc 5-1 at 1), and Attachment D (below)

Attachment D: Mihaylo's Motion for Status Hearing, Maricopa County Probate Court PB 2019-002031, dated July 6 2020, filed July 10 2020. This attachment also provides Mihaylo's handwriting sample.

Dated this ____ day of August, 2020

James J. Knochel, Pro Se                  [unavailable]
P.O. Box 3499                             Emily N. Mihaylo, Pro Se
Prescott, AZ 86303                        6764 West Gelding Dr.
knochj@gmail.com                          Peoria, AZ 85381
(602) 842-2688                            emilymihaylo@icloud.com
                                          (602) 481-1743

1  DYER BREGMAN & FERRIS, PLLC
   3411 N. 5th Avenue, Suite 300
2  Phoenix, Arizona 85013-3811
   (602) 254-6008
3
   Kelly L. Kral, #019517
4  klkral@dbfazlaw.com

5  Charles Michael Dyer, #017994
   cmdyer@dbfazlaw.com
6
   Attorneys for Temporary Guardian/Temporary Conservator:
7  COMPASS FIDUCIARY GROUP, LLC (AZ Fid. Lic. # 20647)

CLERK OF THE
SUPERIOR COURT
FILED
A. RODRIGUEZ, DEP

2019 DEC 12 PM 3: 43

# Attachment A

8
9        IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

10              IN AND FOR THE COUNTY OF MARICOPA

11  In the Matter of the Guardianship and      )  Case No.: PB2019-002031
    Conservatorship for:                       )
12                                             )  **NOTICE OF CHANGE OF ADDRESS**
                                               )  **FOR WARD AND UPDATE TO**
13  **EMILY N. MIHAYLO,**                      )  **PROBATE INFORMATION SHEET**
                                               )
14                                             )
                            An Adult.          )  *(Assigned to the Hon. Carolyn Passamonte)*
15  _____)

16        COMPASS FIDUCIARY GROUP, LLC (AZ Fid. Lic. # 20647), Temporary

17  Guardian and Temporary Conservator for EMILY N. MIHAYLO, an Adult, through

18  undersigned counsel, hereby provides notice that there is a change of address for the Ward.

19  Her new address is as follows:

20              EMILY N. MIHAYLO
                6764 West Gelding Dr.
21              Peoria, AZ 85381
                (623) 315-2353
22
          DATED this 12th day of December, 2019.
23
                            DYER BREGMAN & FERRIS, PLLC
24
25              By: _____
                    KELLY L. KRAL
26                  CHARLES M. DYER
                    Attorneys for Temporary Guardian/
                    Temporary Conservator

DYER
BREGMAN&
FERRIS
3411 N. 5th Avenue
Suite 300
Phoenix, AZ 85013-3811
(602) 254-6008

Page - 1 -

CLERK OF THE SUPERIOR COURT
FILED

FEB. 1 8 2020    ᴅᴜ ᴘᴜᴏᴜ

M, Mᴀʜʜ, ᴅᴇᴘᴜᴛy

1   DYER BREGMAN & FERRIS, PLLC
    3411 N. 5ᵗʰ Avenue, Suite 300
2   Phoenix, Arizona 85013-3811
    (602) 254-6008
3
    Kelly L. Kral, #019517
4   klkral@dbfazlaw.com

5   Charles M. Dyer, #017994
    cmdyer@dbfazlaw.com
6
    Attorneys for COMPASS FIDUCIARY GROUP, LLC
7   (AZ Fid. Lic. #20647)

8

# Attachment B

9            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

10              IN AND FOR THE COUNTY OF MARICOPA

11

12  In the Matter of the Guardianship and ) Case No.: PB2019-002031
    Conservatorship for:                  )
13                                         ) **LETTERS OF APPOINTMENT AS**
                                           ) **GUARDIAN FOR AN ADULT**
14  **EMILY N. MIHAYLO,**                  )
                                           )
15                                         )  *(Assigned to Hon. Christian Bell)*
                   an Adult.              )
16  ─────────────────────────────────────)

17

18          COMPASS FIDUCIARY GROUP, LLC (AZ Fid. Lic. #20647) is hereby appointed

    as Guardian for EMILY N. MIHAYLO, an Adult, with <u>all</u> of the powers set forth in A.R.S.
19
    §§ 14-5312, without restriction. The Guardian's authority also specifically <u>includes but is</u>
20
    <u>not limited to</u>:
21
            1.      The power to make health care decisions set forth in A.R.S. § 36-3201 *et seq.*
22
    (which includes election of "comfort care"[1], and cessation of artificially administered food
23
    and fluid);
24
            2.      The power to manage money and assets as consistent with § 14-5312(A)(4);
25

26

─────────────────────────

DYER
BREGMAN&
FERRIS
3411 N. 5th Avenue
Suite 300
Phoenix, AZ 85013-3811
(602) 254-6008

[1]As defined by § 36-3201.                    Page - 1 -



1    3.    The power pursuant to § 14-5312.01(A) to consent on behalf of EMILY N.

2  MIHAYLO to receive psychiatric and psychological care and treatment **outside** a level one

3  behavioral health facility licensed by the Arizona Department of Health Services.

4    EMILY N. MIHAYLO's right to retain or obtain a driver's license, pursuant to

5  A.R.S. § 28-3153(A)(8), **is** suspended by the appointment of a Guardian.

6    EMILY N. MIHAYLO's right to vote **is** suspended by the appointment of a

7  Guardian.

8    DATED: _____FEB. 1 8 2020_____.

9                                    Clerk of the Superior Court

10                                   JEFF FINE

11

12                                   By: _____
                                         Deputy Clerk

13                                                    M. Marin
                                                    Deputy Clerk

14

15

16

17

18

19

20

21

22

23

24

25

26

DYER
BREGMAN&
FERRIS
3411 N. 5th Avenue
Suite 300
Phoenix, AZ 85013-3811
(602) 254-6008

| | |
|---|---|
| Dates | |
| rch 5, 19 | Showed up at Mental Health hearing after being asked by the Probation department in months prior not to come back to mental health court. |
| | (There is currently a no contact order from Mental Health court placed on me, Emily Mihaylo, toward James Knochel. |
| ril 2, 19 | James knochel shows up at mental Health Cort For the 3rd time; is escorted out of the court room, doesn't leave. Then harassed myself, my house manager from View Point, and one officer of the courts by taking pictures on his phone. |

# Attachment C

• I am currently a client at View Point treatment center. He has been writing letters to the Supreme Court, & Federal Court to get me out of the treatment Center I am paying to be at. He has Called a filing called <u>Next Friend</u> saying I am not capable of making my own decisions, I have asked him to stop writing letter to the courts pertaining to me.

• He has showed up at View Point after he has been asked to not comeback.

• He has written letter to the Adult Probation Department also trying to get me off of Probation, I asked him to stop doing this.

Emily Mihaylo
6864 W. Gelding Dr.
Peoria AZ 85381

CLERK OF THE
SUPERIOR COURT
FILED
K. WHITSON. DEP

2020 JUL 10 PM 4:16

# Attachment D

In the Superior Court of the State of Arizona
In and For the County of Mericopa

| In the Matter of the Guardianship & Conservatorship for: | Case No: PB 2019-002031 |
|---|---|
| Emily N. Mihaylo | Motion for status hearing |

I wrote the attached grievance letter myself.

I would like a hearing with the judge.

Emily Mihaylo

July 6th, 2020

To the judge of the Superior Court of the State of Arizona,

My guardians have denied me the right to have a new psych-evaluation. I have been advocating since March for a second opinion. The guardian said over the past few months that this could not be done. They said that the first psychiatrist said it was only ok to do again a year later.

When I speak to them, they are evasive toward my questions. They have lied to me about how long my stay would be at Orion homes. Then Beth, from Compass Faduciary, asked me who told me I would be leaving Orion homes (as if they never gave me a time frame back in February).

The level of neglect towards me is apparent, but something I must mention more importantly is a situation that happened at the psychiatrists office last December, when Jason Cobb asked me,
        "How much money are we talking about."
I replied, "Millions."

Now, while I am being housed and at the group home, there is a court case going on. I fear the worst! Compass Faduciary is trying to place all the inheritance that belongs to my Sister, Sarah Mihaylo, and myself into a Trust company I have never heard of. There is a lot at stake.

My December psych-evaluation said terrible things about my level of intelligence. It claimed I could not understand what happens in court. I suppose that is why Compass Faduciary never has at any point allowed me to attend my compliance hearings. They have never talked with me about any court hearings; I had to find out online for myself. How would Compass, Jason Cobb & Beth Willard know that I am compliant when they never check with Orion Home's Gelding house where I reside.

My emotional needs were rejected in an email signed by Jason Cobb. I wrote a grievance email to Beth Willard. After that, Jason stated in an email that Compass Faduciary was aware of my suffering, saying we talked about it (as if it was the end all be all). Then, even though I was suffering because of a poorly written psych-evaluation, they would not let me take another one.

In December during the evaluation in-take, the Doctor used my past against me, and painted me as someone I am not. From this old material that he gathered his facts from, he was led to conclude that I needed to go into a treatment facility and extensive therapy, both of which Compass Faduciary did not comply with.

What the psychiatrist did or must not have realized is that I had just spent three years at a treatment facility in Prescott, Arizona, where I received extensive therapy. Therefore, his recommendation was extremely redundant. How much time in treatment does a person have to go through before they stand on their own two feet again? I did relapse. I have always been honest about my recovery and willing to put in more work toward my recovery.

The psychiatrist said I do not understand court proceedings. However, in his assessment of me he states that I had a "change of heart about doing drugs again," and that is why I took a plea agreement in court. I took the plea because it was four months in jail or to accept the felony on my record. I also had violated probation. At the time I felt it was my responsibility to accept the felony.

Before my father attempted to become my guardian I was living happily on my own in Prescott Az. I had a nice apartment, and I owned my own car. I achieved all of this on my own, living as an independent person. I did not speak to my sister Sarah Mihaylo, or my father, Steve Mihaylo that much. I was very responsible with my money- most of it was in a special savings account, I had a separate expense account for bills, and a small amount of fun money.

My big mistake was going off my medications. I realize now how important it is to stay on my medication. I have had my whole life stripped from me in just a few short months. Housed in a highly restricted Group Home environment for half a year has been the most difficult thing I have ever done.

To date Compass Faduciary has taken a total of $90,000 from my trust funds. I have no idea where my funds are being spent, I only know that I am paying a total of $1500.00 a month to live in a group home. I can only hope I have funds left when I get my life back.

The guardian/fiduciary that was appointed me have done nothing for me except drop me off at this group home and forget about me. And spend my money. They had my drivers license revoked, they sold my car without my permission and took my passport. I am more than willing to do as the court sees fit. I feel I can do these things on my own. Without a guardian/faduciary.

Thank you
Emily Mihaylo